[No. 1666.]

### CALEDONIO CHEVARRIO v. THE STATE.

1. PRACTICE — INDICTMENT.— Notwithstanding the common law rule and the practice prevalent in this State, it is not essential under our Code that an indictment should state that the grand jurors were sworn, or that the presentment was made upon their oaths or affirmations. It is sufficient if it appears from the indictment that it was the act of a grand jury of the proper county.

2. SAME.— Objection that the grand jurors who presented the indictment were not sworn as such cannot be entertained when presented by exception to the indictment.

3. SAME — CHARGE OF THE COURT.— Objections to the charge of the court should be embodied in a bill of exceptions, or correction should be sought in a special charge asked.

4. MURDER — FACT CASE.— See statement of the case for evidence *held* sufficient to support a capital conviction for murder.

APPEAL from the District Court of Webb. Tried below before the Hon. J. C. Russell.

This is a second appeal from a capital conviction, founded upon an indictment which charged the appellant with the murder of Guadalupe Trevino and one Antonio, in Encinal county, Texas, on the 3d day of May, 1879. See 15 Texas Ct. App., 330.

Marta Torres was the first witness for the State. She testified that her mother, Guadalupe Trevino, and one Antonio, the parties described in the indictment, were killed in Encinal county, Texas, on or about the time alleged in the indictment, by being shot, each through the head, by shots fired by the defendant, from a

twelve-shooting carbine. Witness with her child, and the parties named, were, at the time of the killing, *en route* from Rio Grande City to Laredo. The killing occurred about day dawn at a camp about one mile from the ranche of Don Bernardo Navarro. Witness's mother, the deceased Guadalupe, and the deceased Antonio, who was in Guadalupe's employ as driver, were asleep together inside the wagon. The shooting was done from a tree about fifteen feet in the rear of the wagon. The witness dropped her baby during the shooting. After he had fired some six or eight shots, the defendant came up to the wagon and spoke to the witness, who was then holding to one side of the front of the wagon. Witness made an effort to reach for her baby, and for the first time discovered that she, too, had been shot, her arm being broken.

When defendant came up to the wagon he approached it at the front, opposite and facing the witness, and witness saw his face plainly. He then walked to the rear of the wagon, took out a butcher knife, cut the straps which secured a large trunk, and with his gun broke open the trunk and scattered the contents about the ground. He then secured a shawl, mounted his horse and rode rapidly off towards the Rio Grande. About noon on the next day a man named Ortego, an employé on the ranche of Don Bernardo Navarro, came to the wagon. Mr. Ortego went for help and returned to the wagon in the afternoon with Don Bernardo, when the two bodies were buried and the witness and her child taken to Don Bernardo's house. Witness had never before seen the defendant, and did not see him again until four years and a half afterwards. She then identified him readily, picking him instantly out of ten or a dozen Mexicans ranged in a row. Witness was absolutely certain that the defendant was the identical man who shot and killed the persons named in the indictment, and wounded herself.

Don Bernardo Navarro testified, for the State, that about the 6th day of May, 1879, Ortego came to his ranche and told him that a murder had been committed within a mile of the ranche. Witness went with Ortego to a camp, found a wagon, the bodies of a man and woman, each showing two or three or more gun-shot wounds in the head, and another woman, the witness Marta Torres, wounded, and a baby. Witness had the two bodies buried and the wounded woman and her child removed to his ranche. Witness assisted in gathering together the scattered contents of a broken trunk. He found also where some party had stood behind a tree some fifteen or twenty steps in the rear of the wagon, and eight or nine shells of a twelve-shooting carbine. This person, leaving the camp horse-

back, went in the direction of the Rio Grande. Prior to the last term of court, the witness had never seen the defendant.

No brief for appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WILLSON, JUDGE. I. At common law an indictment must state in the commencement that the grand jurors presenting the same were sworn as such, and that the same is presented upon their oaths or affirmations. (1 Bish. Crim. Proc., § 666; Whart. Cr. Pl. & Pr., § 95.) Such is also the common form in this State. In the indictment before us the statements above mentioned are omitted, the language of the commencement being, " The grand jurors of Webb county present," etc. Exceptions to the indictment presenting this supposed defect were overruled, and this ruling is assigned as error. We are of the opinion that under our Code it is not essential to state in the indictment that the jurors were sworn, or that the presentment was made upon their oaths or affirmations. It is sufficient if it appears from the indictment that it is the act of a grand jury of the proper county (Code Crim. Proc., art. 420, subd. 3), and this appears from the allegation that the grand jurors of Webb county, the county having jurisdiction of the offense, are the jurors who present it to the court. We are further of the opinion that an objection that the grand jurors who presented the indictment were not sworn as such cannot be entertained when presented by exception to the indictment. (Code Crim. Proc., arts. 528, 529.) In all essential respects the indictment is sufficient, and the court did not err in overruling the exceptions to it.

II. It is assigned as error that the court erred in its charge to the jury. No exceptions were taken to the charge at the time of the trial, and no additional instructions were requested by the defendant. No particular error is pointed out, and, there being no brief or argument in behalf of defendant, we are not informed in what respect the charge of the court is supposed to be erroneous. We have examined the charge carefully, and if it be in any particular objectionable we are unable to perceive it. It presents clearly all the law applicable to the evidence.

III. As to the sufficiency of the evidence, there can be no question. It was a deliberate double-murder, one of the victims being a woman. That the defendant is the person who perpetrated it, the evidence is direct, uncontradicted and conclusive. It was mur-

der in the first degree, and of such unmitigated atrocity as to well warrant the jury in assessing the punishment of death.

The judgment is affirmed.

*Affirmed.*

[Opinion delivered January 10, 1885.]